Hillsborough,
No. 5170.

HARDWARE MUTUAL CASUALTY COMPANY

*v.*

CLYDE H. HOPKINS *& a.*

Argued October 3, 1963.
Decided December 30, 1963.

*Sullivan, Gregg & Horton* (*Mr. Sherman D. Horton, Jr.* orally), for the plaintiff.

*Upton, Sanders & Upton* (*Mr. John H. Sanders* orally), for defendants Smith.

*George P. Cofran* and *L. Wilder Quint* (*Mr. Quint* orally), for defendant Merchants Mutual Ins. Co.

*Cheever & Sullivan* for Clyde H. Hopkins, furnished no brief.

*William D. Tribble* for Willard E. McGinnis, Jr., furnished no brief.

*Kenneth A. Brighton* and *Richard R. Fernald* for defendants Garabrant, furnished no brief.

*Devine, Millimet, McDonough, Stahl & Branch* (by brief as *amicus curiae*).

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* (by brief as *amicus curiae*).

WHEELER, J. The pertinent facts bearing upon the issue before us are stated in the reserved case in the following language: "The defendant, Kenneth Garabrant, a minor, on December 10, 1961, at Leominster, Massachusetts, while driving a 1957 Pontiac automobile owned by the defendant, Clyde H. Hopkins, d/b/a Hopkins Garage, and insured by the plaintiff, Hardware Mutual Casualty Company, was in collision with a motor vehicle operated by the defendant, J. Gilbert Smith. In the Smith vehicle at the time of the collision, in addition to J. Gilbert Smith, were Gladys Smith, Deborah Smith, Geoffrey Smith and Joel Smith. Willard E. McGinnis, Jr. was a passenger in the vehicle driven by Kenneth Garabrant. The defendant, Merchants

Mutual Insurance Company, on December 10, 1961, insured Kenneth Garabrant, son of Margaret Garabrant, by virtue of so-called non-owner automobile liability policy issued by it to him and further insured an automobile owned by said Margaret S. Garabrant with whom Kenneth was residing.

"By writs brought against Kenneth Garabrant returnable to the Superior Court for the County of Merrimack on the first Tuesday of May, 1963, J. Gilbert Smith sought damages of $30,000 for his injuries, consequential damages of $50,000 for injuries to his wife, Gladys Smith, and consequential damages of $20,000 for injuries to his minor son, Joel Smith; J. Gilbert Smith, Administrator of the Estate of Geoffrey Smith sought damages of $35,000 for injuries to and the death of his minor son, Geoffrey Smith; J. Gilbert Smith, Administrator of the Estate of Deborah Smith, sought damages of $25,000 for injuries to and the death of his minor daughter, Deborah Smith; Gladys Smith sought damages of $100,000 for her injuries; and Joel Smith, by his father and next friend, J. Gilbert Smith, sought damages of $100,000 for his injuries."

The insurance carriers are willing to submit for inspection the three policies involved but do object to disclosing the amounts of coverage on the ground that they are not material to the pending civil actions and that there is no inherent discoverable interest in the information of coverage limits and the defendants Smith here are on "a fishing expedition."

Although subject to limitations (*Staargaard* v. *Company*, 96 N. H. 17), "discovery in civil actions has been regarded in this jurisdiction as a proper procedural aid for the parties to prepare their case in advance of trial and has been given a broad and liberal interpretation. *Drake* v. *Bowles*, 97 N. H. 471; *New Castle* v. *Rand*, 101 N. H. 201. In encouraging use of discovery and depositions (*Krook* v. *Blomberg*, 95 N. H. 170) it has been pointed out that it operates with desirable flexibility under . . . discretionary control . . . and that this is a logical method of preventing surprise and permitting both court and counsel to have an intelligent grasp of the issues to be litigated and knowledge of the facts underlying them." *McDuffey* v. *Boston & Maine R. R.*, 102 N. H. 179, 181.

Defendant Smith's counsel argued to the Trial Court that it is necessary to know "the coverages that are involved here to determine to what extent these policies interplay. Are they pro rated, does one come on top of the other and so on and so

forth. He's [the Court] got to allocate the responsibilities of the insurance companies here involved. The mutual rights and obligations of all parties have got to be adjudicated." Counsel further argues that it is necessary to know at least whether the Merchants Mutual policy ever comes into effect since if there is sufficient coverage in the Hardware Mutual policy to cover the ad damnum and they are required to pay, Merchants probably would never come into play.

In *Villars* v. *Portsmouth*, 100 N. H. 453, we allowed discovery of the coverage limit of any liability policy since if negligent the city could claim governmental immunity as to liability not insured against. RSA 412:3. See also, *Christie* v. *University Regents*, 364 Mich. 202, and Wilson, 29 Ins. Counsel J. 258, 264, discussing these cases.

The authorities, both state and federal, are by no means in agreement upon the question. Many of them turn upon whether the local procedural statute or rule should be strictly or liberally construed, and in some jurisdictions discovery of coverage limits is allowed on the theory that in some cases disclosure would encourage settlement. Developments in the Law-Discovery, 74 Harv. L. Rev. 940 (1961); 39 N. D. L. Rev. 107 (note); 48 Va. L. Rev. 122 (note).

Among the multitude of conflicting opinions, both state and federal, upon the question of disclosure of the amount of policy coverage the following selected jurisdictions deny disclosure. *Verrastro* v. *Grecco*, 21 Conn. Sup. 165; *Jappesen* v. *Swanson*, 243 Minn. 547; *Brooks* v. *Owens*, 97 So. 2d 693 (Fla. 1957); *Cooper* v. *Stender*, 30 F.R.D. 389 (E. D. Tenn. 1962); *Gallimore* v. *Dye*, 21 F.R.D. 283 (E. D. Ill. 1958); *Langlois* v. *Allen*, 30 F.R.D. 67 (D. Conn. 1962); *McClure* v. *Boeger*, 105 F. Supp. 612 (E. D. Pa. 1952). Among the jurisdictions permitting such disclosure see *Rolf Homes, Inc.* v. *Superior Court*, 186 Cal. App. 2d 876; *Maddox* v. *Graumann*, 265 S. W. 2d 939 (Ky. App. 1954); *People ex rel Terry* v. *Fisher*, 12 Ill. 2d 231; *Orgel* v. *McCurdy*, 8 F.R.D. 585 (S. D. N. Y. 1948); see Annot. 41 A. L. R. 2d 968.

In considering the reasons advanced by counsel for defendants Smith for discovery of the amounts of insurance coverage we cannot see how such information would aid in the preparation of this case for trial. The relative rights and obligations of the insurers can be determined without reference to the amounts of coverage provided, and principles governing the right to dis-

covery furnish no basis for the order requiring that they be disclosed. The order of the Trial Court should be modified to provide for omission of references to the amounts of coverage from the copies of the policies required to be furnished.

*Exceptions sustained.*

All concurred.